ANNA G. PIZZINI

*v.*

WILLIAM B. PIZZINI et al.

[Submitted July 8th, 1919.   Determined July 17th, 1919.]

Where the complainant made her son her attorney in fact, and author-
ized him to sign deeds, endorse checks and receive any and all money
due her, and the son forged complainant's name to an assignment of
mortgage, and collected the money due thereon—*Held*, as complainant
had made him her agent, and he was authorized to dispose of the mort-
gage and receive payment therefor, the assignee acquired at least an
equitable title thereto.

On final hearing on bill to declare assignments of mortgage
to be void.

*Messrs. Bolle, Sooy & Gill,* for the complainant.

*Mr. Charles C. Babcock,* for the defendants Louis Gerstley,
William B. Rosskam and Land Title Company, trustees, and
John J. White.

LEAMING, V. C.

December 24th, 1913, a mortgage for $5,000 was made to com-
plainant on certain real estate at Atlantic City.

March 17th, 1914, that mortgage and the bond it secured were
purchased by the testamentary trustees of Isaac Rosskam, de-
ceased, for the full amount of the mortgage.

December 29th, 1916, defendant John J. White purchased
from the testamentary trustees the same bond and mortgage and
paid therefor the full amount of the mortgage and accrued
interest.

Complainant's bill seeks a decree declaring void the two as-
signments of the mortgage, alleging as ground for relief that

the assignment of December 24th, 1913, made to the testamentary trustees was a forgery.

It is conceded that both purchases were made in entire good faith and without any knowledge or reason to know or suspect that the assignment purporting to be from complainant to the testamentary trustees was in any way defective.

At final hearing experts of the highest standing disagreed as to whether the name of complainant, which is signed to the questioned assignment, is in fact her signature; but the evidence which has been adduced, other than opinions of handwriting experts, strongly indicates the signature was not made by complainant, but was made by her son William, although the facts cannot be said to be wholly free from doubt.

I entertain the view, however, that even though it should be determined that complainant's name to the questioned assignment was not in fact written by her, the relief sought by complainant cannot be awarded, for the reason that the purchase price of the mortgage was received by an agent of complainant, who was duly authorized to receive it; in such circumstances, the purchasers of the mortgage became clothed with the equitable title thereto.

The essential facts touching the purchase of the mortgage by the testamentary trustees may be briefly stated as follows:

The purchasers of the mortgage were represented in the transaction by the South Jersey Title and Finance Company, and Mr. Ernest A. Lord, as secretary of that company, had entire charge of the transaction for his company. All negotiations touching the sale of the mortgage were with Wm. B. Pizzini, a son of complainant, and were by correspondence with him. March 18th, 1914, he forwarded by letter to the title company the mortgage and the bond it secured, two insurance policies and the assignment of the mortgage here in question, which assignment bears date March 17th, 1914, and purports to be signed by complainant and duly acknowledged by her on that day before her said son William as an acknowledging officer; the letter of complainant's son also contained a request that after deducting the proper charges the title company should mail its check to him for the balance. March 30th, 1914, the title company forwarded

by letter to complainant's son William a check for $4,852.70, the same being the $5,000 purchase price of the mortgage, less settlement charges; that check was made payable to the order of complainant. On the same day the bond and mortgage and policies of insurance were mailed by the title company to the assignees of the mortgage, and the assignment was mailed for record. The check of the title company was drawn on the Marine Trust Company and was paid by that company in due course. It bears the following written endorsements: "Pay to the order of Wm. B. Pizzini, Anna G. Pizzini," and also thereunder "Pay to the order of American National Bank, for deposit to credit of Wm. B. Pizzini." It is also claimed on behalf of complainant that her name appearing on the back of that check is not in her handwriting.

The mere circumstance that the son was in possession of the mortgage and negotiated its sale and delivered it with the bond and insurance policies to the purchaser may be assumed to be insufficient to justify payment of the purchase price to him or even to justify the delivery to him of a check for the purchase price payable to complainant's order, since the son's possession of the securities, standing alone, would not import either a power to sell or collect; but the evidence further establishes that the son was in fact clothed by complainant with power to sell the mortgage and to collect the purchase price. For some time the son had had entire charge of his mother's property and business affairs, and by a formal written power of attorney he was authorized by her to attend to all of her affairs, the powers thus conferred including the power of signing and endorsing checks or negotiable notes and signing deeds and the power to receive any and all sums of money due to her.

This son was, accordingly, clothed by his mother with power and authority to sell this mortgage and to collect its proceeds of sale. The assignment of the mortgage, which was accepted by the title company, purported to be from complainant and not from her son as her attorney-in-fact, although Mr. Lord, who represented the title company, had been apprised in a former transaction of the existence of a power of attorney held by the son from his mother. The check given for the purchase price

was made payable to complainant's order and not to her son as attorney-in-fact. Accordingly, it may be said that the title company was not dealing with the son as an attorney-in-fact. But the son was, nevertheless, an attorney-in-fact and was clothed by his mother with ample power to sell and deliver the mortgage and to receive the proceeds of sale whether the written assignment of the mortgage should be signed by him as attorney-in-fact or by his mother in person; much more then was he privileged by his mother to become the custodian of a check payable to her order. If, as an authorized custodian of that check, he failed to apply it to his mother's use, the loss must fall upon her as against the purchaser of the mortgage. I think it immaterial that the trust company did not deal with the son under his power of attorney. It fully appears by the testimony that the son was in fact a lawful custodian of the mortgage; he, in fact, also enjoyed from his mother power to collect it or to sell it; he agreed to sell it, and in fact sold and delivered it; the purchaser in good faith delivered to the attorney-in-fact a check for the purchase price payable to the mother's order; if the powers of the attorney-in-fact included the right to receive the check in that form it is clearly immaterial whether the person so delivering the check knew of or relied upon the power of attorney, since the check was from the moment of its delivery in the possession of an agent of complainant who had authority to receive it. Complainant's effort is to repudiate her son's act in selling the mortgage and receiving the proceeds, not because her son was not clothed by her with the power to sell and collect, but because the purchaser was not at that time fully aware of the fact that the son enjoyed those powers. It follows that if the instrument which was delivered by the attorney-in-fact as a valid, legal assignment of the mortgage was not effective as such, equitably the assignee must be deemed to have acquired, as against complainant, a title co-extensive with that which the attorney-in-fact had power to confer.

I will advise a decree dismissing the bill.